UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
THE FEDERAL SAVINGS BANK,
                              Plaintiff,

          -v-                                          24-CV-3658 (JPO)

TSYNGAUZ & ASSOCIATES, P.C.,            OPINION AND ORDER
                              Defendant.
———————————————————————

J. PAUL OETKEN, District Judge:

Plaintiff, The Federal Savings Bank ("TFSB"), brings this action seeking indemnification from Defendant, Tsyngauz & Associates, P.C. ("T&A"), for damages stemming from an allegedly inaccurate attorney opinion letter on which TFSB relied. Before the Court is T&A's motion to dismiss. For the reasons that follow, the motion is granted.

**I.     Background**

The following facts are drawn from TFSB's Complaint (ECF No. 7 ("Compl.")), and are presumed true for purposes of this opinion. All reasonable inferences are drawn in Plaintiff's favor. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

In 2016, Pyotr Yadgarov, the managing member of several LLCs (the "Borrowers"), negotiated a mortgage loan with TFSB. (Compl. ¶¶ 11-13.) T&A acted as legal counsel to the Borrowers. (*Id.* ¶ 15.) In connection with the loan, the parties agreed that TFSB would obtain liens on several properties, including 8629 Bay Parkway, Brooklyn, NY (the "Bay Parkway Property"). (*Id.* ¶ 14.) On approximately June 1, 2016, Yadgarov signed a term sheet describing these liens, which was provided to T&A. (*Id.* ¶¶ 16-17.) Unfortunately for TFSB, however, a

different company—W Financial Fund, L.P. ("W Financial")[1]—already had a lien on the Bay Parkway Property.  (*Id.* ¶¶ 17-18.)  That lien "expressly provided that the mortgagor would be prohibited from placing any subordinate or other mortgages or liens on the [Bay Parkway Property]."  (*Id.* ¶ 19.)  In addition, the Borrowers' "payments on loans to W Financial were overdue and thus they were technically in default on the mortgage."  (*Id.* ¶ 22.)

As part of the closing process for the Borrowers' loan, T&A provided an attorney opinion letter to TFSB.  Although T&A was aware of the preexisting lien, its letter nonetheless stated: "The execution and delivery of the loan documents and the Borrower's performance and conditions thereof do not and will not . . . result in a breach of or constitute a default under any indenture or loan or credit agreement or any other agreement or instrument to which the Borrower is a party or by which the Borrower or its respective properties may be bound or affect, and, to our knowledge after inquiry, the Borrower is not in default under any such . . . indenture, agreement, lease or instrument."  (*Id.* ¶ 20.)  Relying on T&A's opinion letter, TFSB approved the loan and distributed the proceeds to the Borrowers.  (*Id.* ¶ 23.)  When TFSB recorded its lien on the Bay Parkway Property, "W Financial then declared the Borrowers to be in default" and "the Borrowers filed a lawsuit against TFSB arising from the default . . . assert[ing] a number of claims, including . . . fraudulent inducement . . . ."  (*Id.* ¶¶ 24-25.)  T&A represented the Borrowers in that action.[2]  (*Id.* ¶ 25.)  TFSB settled that action with the Borrowers for a "substantial" amount (*id.* ¶ 31), and is now attempting to recoup its loss from T&A.

---

[1] It is unclear from the complaint what, if any, relationship exists between W Financial and the Borrowers other than that of an ordinary creditor to its borrower.

[2] The Borrowers, in that action, and T&A, here, claim that TFSB misled them by promising not to record the new lien on the Bay Parkway Property.  (*See* ECF No. 12-1 at 4.)  The Court can discern no reason why a lender would refrain from recording a lien it obtained as security for a newly distributed loan, nor why a borrower would request such conduct unless to effectuate (or as the result of) a fraud.  In any event, such allegations are irrelevant for now, as

TFSB filed the present action on May 13, 2024, though due to a filing error, the operative complaint was entered on the Court's docket on May 16, 2024. (*Id*.) T&A moved to dismiss on July 9, 2024 (ECF No. 12), and filed a supporting memorandum of law (ECF No. 12-1 ("Mem.")). TFSB opposed the motion on August 8, 2024 (ECF No. 20 ("Opp.")), and T&A replied on August 15, 2024 (ECF No. 21 ("Reply")).

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id*. at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). Determining whether a complaint states a plausible claim is ultimately a "context-specific task

---

"the Court declines at this juncture to rely on extrinsic evidence such as communications between the parties and affidavits by Defendants that were not included in or incorporated by the complaint." *Goldberg v. Bespoke Real Est. LLC*, No. 23-CV-5614, 2024 WL 1256006, at *7 (S.D.N.Y. Mar. 25, 2024).

that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.   Discussion

TFSB asserts only one cause of action in its complaint, styled as a claim for "common law indemnification." (Compl. ¶¶ 35-38.) According to TSFB, T&A "agreed, or is otherwise obligated by law . . . to indemnify TFSB arising out of or resulting from [T&A's] issuance of the Attorney Opinion Letter that TFSB relied upon in approving the loan." (*Id.* ¶ 36.)

In New York, "[a] party's right to indemnification may arise from a contract or may be implied 'based upon the law's notion of what is fair and proper as between the parties.'" *McCarthy v. Turner Constr., Inc.*, 17 N.Y.3d 369, 374-75 (2011) (quoting *Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680, 690 (1990)). "Implied, or common law, indemnity," at issue here,[3] "is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *Id.* (cleaned up) (quoting *Mas*, 75 N.Y.2d at 690). Crucially, "[c]ommon-law indemnification is generally available 'in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer,'" such as an employer responsible for the negligence of an employee, or holders of statutorily defined nondelegable duties. *Id.* (quoting *Mas*, 75 N.Y.2d at 690); *see also Trs. of Columbia Univ. in City of N.Y. v. Mitchell/Giurgola Assocs.*, 492 N.Y.S.2d 371, 375 (1985) ("[T]he predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee."). Courts have split over whether common-law indemnity extends to other forms of no-fault liability. *Compare Haraden Motorcar Corp. v. Bonarrigo*, No. 19-

---

[3] Although TFSB's complaint suggests that T&A may have "agreed" to indemnify it, TFSB points to no oral or written contract to that effect, other than the automatic implication of indemnification that it alleges arises from the provision of an attorney opinion letter.

CV-1079, 2021 WL 4906989, at *5 (N.D.N.Y. Oct. 21, 2021) ("[I]ndemnity may also be premised on theories such as strict product liability and breach of warranty."), *with Durabla Mfg. Co. v. Goodyear Tire & Rubber Co.*, 992 F. Supp. 657, 660 (S.D.N.Y. 1998) ("[T]here is nothing passive about the role of a distributor of a defective or hazardous product, and any analogy between strict liability and instances in which liability is fixed on another without regard to any volitional act is clearly flawed." (quotation marks and ellipses omitted)).  But "the basis underlying all of these grounds for indemnity is that the liability of the party seeking indemnification is imposed by 'imputation of law.'" *Haraden Motorcar Corp*, 2021 WL 4906989 at *5 (quoting *Metro. Transp. Auth. v. Systra Consulting Inc.*, No. 07-CV-1010, 2008 WL 11438071, at *5 (E.D.N.Y. Dec. 30, 2008)).  Where a putative indemnitee "incurred the alleged liability as a result of the breach of the obligation it owed directly to [the injured party]," common-law indemnification is not available.  *Systra Consulting*, 2008 WL 11438071, at *5; *see also Eisman v. Vill. of E. Hills*, 52 N.Y.S.3d 115, 118 (2d Dep't 2017) (holding claim should have been dismissed where the proposed indemnitee could "not be held vicariously or statutorily liable for any negligence of any of the third-party defendants").  Likewise, "indemnification is not available where the party seeking indemnification was 'partially at fault' or 'responsible in any degree' in situations where the parties violated the same duty to the plaintiff." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 326 (S.D.N.Y. 2010).

      Application of these principles to the present case is straightforward.  TFSB incurred its legal liability to the Borrowers directly by settling a legal claim for fraudulent inducement based on TFSB's alleged promise that it would not record its lien on the Bay Parkway Property.

(Compl. ¶¶ 32.)[4] Liability for fraudulent inducement involves fault, and does not arise vicariously or otherwise by operation of law. *See Friar v. Wyndham Vacation Resorts, Inc.*, No. 20-CV-2627, 2021 WL 1062615, at *4 (S.D.N.Y. Mar. 19, 2021) (explaining that fraudulent inducement requires knowing and intentional misrepresentation); *see also Durabla Mfg. Co.*, 992 F. Supp. at 660 (evaluating the nature of the legal "exposure that led to [the proposed indemnitee's] settlement of the underlying claims" in order to determine whether common-law indemnification was appropriate). "A finding that [TFSB] is liable to [the Borrowers] [would] necessarily entail a finding that [TFSB] engaged in tortious behavior, rendering [TSFB] unentitled to indemnification." *Haraden Motorcar Corp.*, 2021 WL 4906989 at *6.

In addition, while it is well established in New York that an attorney can be liable to a non-client for negligent misrepresentation based on an opinion letter like the one here, *see Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 382-85 (1992), any such claim would be time barred, as the relevant misconduct occurred in 2016, *see Gerschel v. Christensen*, 40 N.Y.S.3d 41, 43 (2016) (statute of limitations for negligent

---

[4] The complaint states that the lawsuit alleged fraudulent inducement. (Compl. ¶ 25.) T&A has also attached the relevant opinions from that case, which make clear that fraudulent inducement was the only remaining claim when TFSB settled the case. (ECF Nos. 12-5, 12-6, 12-7.) Although TFSB did not attach those opinions to its complaint, the Court may nonetheless consider them, as TFSB's current claims stem entirely from that lawsuit. *Cf. Nevias v. Crystal Vision, LLC*, No. 23-CV-7075, 2024 WL 3938262, at *3 (S.D.N.Y. Aug. 26, 2024) ("Even if a plaintiff has failed to attach or incorporate by reference a document 'upon which it solely relies and which is integral to the complaint,' the defendant may produce the document in its motion to dismiss for failure to state a claim 'because plaintiff should not so easily be allowed to escape the consequences of its own failure.'" (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). In addition, the Court may take judicial notice of court orders for purposes of determining which claims were asserted and dismissed. *See Dixon v. von Blanckensee*, 994 F.3d 95, 103 (2d Cir. 2021) (taking judicial notice of claims asserted and dismissed in state court order because those facts "cannot reasonably be questioned" and "are apparent from the face of the state court order" (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))).

misrepresentation and legal malpractice is three years, or six years if fraud is involved, and runs from the date of the misrepresentation). The Court sees no basis for equitable tolling, and T&A has clearly indicated that it will not waive a statute of limitations defense. (*See* Reply at 6.) Any amendment of the complaint would therefore be futile, and TFSB's request for leave to amend is denied. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility . . . .").

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 12, enter judgment of dismissal of the complaint with prejudice, and close this case.

SO ORDERED.

Dated: January 27, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge

7